ELMSLIE et al. v HAGAR et al.

(District Court, E. D. Pennsylvania. May 14, 1900.)

1. SHIPPING—CONSTRUCTION OF CHARTER—LAY DAYS.
    A charter party, as modified by further agreements between the parties, construed with reference to the number of lay days allowed for loading and discharging cargo.

2. SAME—DEMURRAGE—DELAY DUE TO NEGLIGENCE OF CHARTERER.
    Where charterers neglected to advise their agents at the port of destination of their agreement to attend to the entering of the ship at the custom house upon her arrival, by reason of which such agents refused to act, and a delay of three days was caused in having the ship entered, the owners were entitled to include such days in the lay days allowed by the charter for discharging.

In Admiralty.

Biddle & Ward and J. Rodman Paul, for libelants.
John F. Lewis and Horace L. Cheyney, for respondents.

McPHERSON, District Judge. In January, 1895 (the charter party bearing the date of December 28, 1894), the libelants, who were the owners of the British bark Banklands, chartered the vessel to the respondents for a voyage from Philadelphia and New York to Rio de Janeiro; the respondent agreeing to furnish a cargo of merchandise, including lumber on deck, locomotives, and car materials. The provisions relevant to the present dispute are the following:

"It is agreed that the lay days shall be as follows (if not sooner dispatched), commencing from the time vessel is ready to receive cargo; 65 running days, Sundays excepted, for loading and discharging, * * * and that for each and every day's detention by default of the said [charterers] or agent, $86.85 United States gold dollars per day, day by day, shall be paid by said [charterers] or agent. * * * The cargo to be received and delivered alongside within reach of the vessel's tackle, free of lighterage to vessel."

"Vessel to be consigned to charterers' agents at Rio, free of commission for doing the vessel's inward business."

The libelants' claim embraces items for lighterage and broker's commissions at Rio, and for demurrage. The charge for lighterage is admitted, and need not be further considered. A credit, however, must be allowed thereon for the money received by the master as a present from the owner of the lighters. The item for commissions is too large. The sum paid to the broker by the master was for doing all the ship's business at Rio, and not merely for doing her inward business. The respondents are only liable for one-half of this item.

The principal dispute is over the charge for demurrage. Upon this point it is necessary to take into account not only the clause concerning lay days, already quoted from the charter party, but also three supplemental agreements, one made when the charter was signed, and the other two made on February 18th and 19th, respectively.

These agreements are as follows: When the charter party was executed on January 5th, the respondents addressed a letter to the libelants' agent stating:

"We sign inclosed c/p with understanding * * *. Also for discharging at Rio as agreed by captain regarding the days for car material and locomotives, viz. he to serve notice on each lot, and lay days to count as one lot.

"Viz. 35 days locos,

"6 to 10 days cars,—to count as 35."

On February 18th, when the vessel had nearly finished taking her cargo on board, a second agreement was made, containing, inter alia, the following provision:

"We refer to your charter party dated December 28, 1894, in which it is stipulated that your vessel is to be loaded and discharged in 65 running days, Sundays excepted, and in consideration of your having indorsed on the bills of lading a clause allowing the consignees 30 running days, Sundays excepted, with a letter allowing 5 more, if required, for discharging the locomotives, and 6 like days for discharging car material, in all 41 days for these two lots of goods, I agree that if the number of lay days left after the completion of loading, over and above the 41, be not sufficient to discharge the other cargo, I will pay demurrage here as per charter for any and all days used over and above the 65 stipulated in charter."

The loading was finished on February 19th, and upon that day it was further agreed "that 23 running days have been used in loading the British bark Banklands under charter dated December 28, 1894, leaving 42 running days, Sundays excepted, for discharging the vessel at Rio de Janeiro."

Taking all the agreements together, I think the plain and natural meaning would be this: The lay days for loading and discharging the cargo were 65 running days, Sundays excepted. Of these 23 days had been consumed in loading. Of the 42 days remaining, 41 were to be allowed to the consignees of the locomotives and the car material in Rio, leaving to the ship, for unloading the general cargo, 1 day only, if the consignees took the full time permitted. If one day should prove insufficient, the respondents expressly agreed to pay demurrage "for any and all days used over and above the 65 stipulated in the charter." Of course, the consignees of the loco-

motives and of the car material were not obliged to use the full period allowed, and, if they unloaded this part of the cargo in less than 41 days, the ship would have at her disposal so much additional time for unloading the general cargo.

This, as I have said, seems to be the literal meaning of the various contracts. But the parties have treated the agreement of January 5th concerning notice as modifying the apparently contradictory agreement of February 18th, so as to allow for discharge of the locomotives and car material 35 days instead of 41. Accepting this construction, the final result appears to be that the ship would have at least 7 days to unload the general cargo, and might have more. In fact, she had 5 days more, making 12 in all; for the consignees of the locomotives, who were themselves to unload this part of the cargo, used only 30 days in so doing. The single question, therefore, to be considered is whether the libelants' claim for an additional 13 days should be allowed. Only 8 of these days were actually occupied in unloading cargo, the charge for the remaining 5 arising under the following circumstances: The ship arrived at Rio on Saturday, March 23d, and on the morning of that day the master called upon the respondents' agents in order to have his inward customs business attended to. This visit was in accordance with instructions received from the respondents before the ship sailed from New York, but by some oversight the agents had not been notified of the instructions, and declined to act. They recommended the captain to apply to another firm of brokers, to whom he had also received a letter of introduction from the respondents. At the office of this firm he found that the principal was absent, and could not be seen before Tuesday, Monday being a holiday, when no business would be done. On Tuesday the firm refused to enter the vessel, and the captain thereupon employed another broker, who finally undertook the ship's business. The vessel was entered at the custom house on the same day, and the next two days were employed by the master in making arrangements to unload the vessel by lighters, this course being necessary owing to the regulations of the port that were then in force. On Wednesday the consignees of the general cargo were notified that the ship was prepared to deliver, but, as such consignees are allowed from one to two days' notice by the custom of the port, actual delivery could not be begun before March 29th. These five days—March 23 to 28 inclusive, Sunday excepted—form part of the libelants' claim. I think three of them should be allowed. The respondents were at fault for failing to notify their agents at Rio of the instructions communicated to the captain at New York. If such instructions had been given, no reason is apparent why the ship could not have been entered on Saturday, and every arrangement made to begin discharging on Tuesday. The lay days would then have begun on Tuesday, March 26th, and I think they should now be counted from that date. Whether the eight additional days should be allowed, is the remaining question. Upon this point I think the respondents are required to prove that these days were not reasonably necessary to discharge the general cargo, taking into

account the conditions of the port, the facilities for doing the work, the quality of labor available, the manner in which the cargo was stowed, and the difficulties in getting at the merchandise in the hold. Without reviewing the facts, it is enough to say that I have come to the conclusion that the time occupied by the ship was not unreasonable, and that these eight days also constitute a proper claim. A decree may be drawn in accordance with this opinion, awarding costs also to the libelant.